IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
JOHN R. HEINEKEN,                   )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    Case No. 13-2293-RDR
                                    )
                                    )
SOCIAL SECURITY ADMINISTRATION,     )
COMMISSIONER OF, Carolyn W. Colvin,)
Acting Commissioner                 )
                                    )
          Defendant.                )
```

**MEMORANDUM AND ORDER**

Plaintiff has filed applications for social security disability insurance benefits and supplemental security income benefits. Plaintiff alleges a disability onset date of July 31, 2010. On June 4, 2012, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on June 13, 2012 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's applications for benefits.

The opinions in the record from persons who provided mental health treatment and counseling to plaintiff indicate that plaintiff was disabled from substantial gainful employment. The ALJ rejected these opinions. Instead, the ALJ relied in part

upon the opinion of a non-examining, non-treating medical consultant. After due consideration, the court shall reverse and remand the decision for further administrative review because the court is convinced that the ALJ did not properly evaluate the opinions of the persons who provided treatment and counseling to plaintiff.

I.   STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal

2

standards.  Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004).  "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 12-20).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 13-14). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments

3

or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth step of the evaluation process.  The ALJ determined that plaintiff maintained the residual functional capacity to perform jobs that exist in significant numbers in the national economy, such as cleaner, stock checker, and photocopy machine operator.

The ALJ made the following specific findings in his decision.  First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2014.  Second, plaintiff did not engage in substantial gainful activity after July 31, 2010, the alleged onset date of disability.  Third, plaintiff has the following severe impairments:  post-traumatic stress disorder, major depressive disorder, anxiety disorder, and osteoarthritis.  Fourth,

4

plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  Plaintiff can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently.  Plaintiff can stand and walk 6 hours in an eight-hour day as well as sit for 6 hours in an eight-hour day.  Plaintiff has an unlimited ability to push and pull and can climb, balance, stoop, kneel, crouch, and crawl occasionally.  Plaintiff also can frequently but not continually, handle and finger bilaterally.  But, plaintiff needs to avoid concentrated exposure to heat.  And, with regard to his mental condition, plaintiff is limited to simple unskilled work at an SVP level of 2 or less.  Plaintiff should also have limited contact with the public, supervisors, and co-workers.

Finally, the ALJ determined that plaintiff is not able to perform his past relevant work as a motorcycle assembler, truck driver and installer.  But, as already mentioned, the ALJ concluded that there were jobs in the national economy which plaintiff could perform given his residual functional capacity.  This last finding was based in part upon the testimony of a vocational expert.

III.  THE ALJ DID NOT PROPERLY ANALYZE THE OPINION EVIDENCE IN THIS CASE.

Dr. Milada Medvedeva was a treating mental health provider for plaintiff starting on July 11, 2011.  She completed a mental impairment questionnaire on May 1, 2012.  (Tr. 1281-1284).  The form states that plaintiff suffered from PTSD related to childhood trauma and also from major depressive disorder.  She rated plaintiff at 50 on the Global Assessment of Functioning (GAF) Scale with a high score during the past year of 50 to 55.  She identified plaintiff's signs and symptoms as:

> poor memory; sleep disturbance; mood disturbance; emotional lability; decreased energy; persistent irrational fears; hostility and irritability; anhedonia or pervasive loss of interests; pathological dependence or passivity; blunt, flat or inappropriate affect; difficulty thinking or concentrating; social withdrawal or isolation; and generalized persistent anxiety.

Also according to the form, plaintiff had:

> a marked restriction in his activities of daily living; marked difficulties in maintaining social functioning; and marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere).

Dr. Medvedeva further reported that plaintiff had a "[m]edically documented history of a chronic organic mental disorder . . . or other psychotic disorder; or affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do any basic work activities, with symptoms or signs

6

currently attenuated by medication or psychosocial support, and . . . [r]epeated episodes of decompensation within 12 months, each at least two weeks long of extended duration." (Tr. 1282). In Dr. Medvedeva's opinion, during a typical workday plaintiff would frequently experience symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks, and plaintiff would likely be absent from work more than four days per month as a result of his impairments or treatment.

Sarah Schroer is a licensed clinical social worker who saw plaintiff on a weekly basis beginning September 23, 2010. She also completed a mental impairment questionnaire regarding plaintiff. (Tr. 1286-1289). The form indicates that plaintiff has PTSD and bipolar disorder and that plaintiff has the following signs and symptoms:

> poor memory; sleep disturbance; mood disturbance; emotion lability; decreased energy; intrusive recollections of a traumatic experience; somatization unexplained by organic disturbance; blunt, flat or inappropriate affect; difficulty thinking or concentrating; paranoia or inappropriate suspiciousness; feelings of guilt or worthlessness; and generalized persistent anxiety.

Schroer further indicated that plaintiff's condition resulted in:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; extreme deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a

7

>     timely manner; and continual episodes of deterioration
>     or decompensation in work or work-like settings which
>     cause the individual to withdraw from that situation
>     or to experience exacerbation or signs or symptoms
>     which may include deterioration of adaptive behaviors.

According to Schroer, plaintiff's symptoms were frequently so severe as to interfere with the attention and concentration needed to perform even simple work tasks and that plaintiff would likely be absent from work more than four days per month as a result of his impairments or treatment. Schroer listed plaintiff's GAF at that time (May 3, 2012) as 35 and listed plaintiff's highest GAF during the past year as 50.

The ALJ discounted Dr. Medvedeva's opinion on the basis that:

>     [Dr. Medvedeva has] just began seeing [plaintiff] in
>     mid 2011 and does not provide a clear rationale (based
>     upon medical findings) to support the conclusions
>     reached in the assessment.  Moreover, Dr. Medvedeva
>     does not account for [plaintiff's] stable and steady
>     functioning in 2010 or the [plaintiff's] ability to
>     obtain housing and care for his children in 2010 and
>     2011.  Instead, the doctor presents [plaintiff] as an
>     individual completely overwhelmed by mental problems,
>     which is incongruent with the above-cited factors.

(Tr. 17). The ALJ also mentioned that other doctors, while noting some cognitive deficits, memory problems, depression and anxiety, did not indicate that plaintiff's memory problems were completely overwhelming or precluded all work.

The court finds that the ALJ's analysis of Dr. Medvedeva's opinion is not supported by substantial or persuasive evidence.

8

According to Dr. Medvedeva, she had seen plaintiff five times over a ten-month period when she filled out the mental impairment questionnaire. Her opinions are consistent with the remarks of other mental health professionals who provided treatment or counseling to plaintiff. Therefore, the ALJ could not properly discount Dr. Medvedeva's opinion on the basis of a limited treatment history.

The ALJ also was critical of Dr. Medvedeva's conclusions on the grounds that they are not based upon "medical findings." The court disagrees with this criticism. Dr. Medvedeva makes reference to the results of two sets of tests, one of which is also referred to by the ALJ. These tests are reviewed in reports by Scott Summerall, a psychologist. (Tr. 1110-1113, 1277-1279). Both sets of tests found severe depression and anxiety. In one report, Summerall concluded:

> Overall, [plaintiff] will struggle to cognitively process information in a standard amount of time. Reminders, while helpful, will not bring recognition into the average range. Based on his performance this date, even mildly challenging tasks will tend to result in reports of significantly elevated stress and associated pain. It is this writer's opinion that the low performance on cognitive tasks [is] primarily secondary to PTSD and depression, although sleep apnea and history of head injuries also likely contribute. At present, this will impede [plaintiff's] capacity for employment. Continuing psychiatric treatment and individual psychotherapy will be necessary aspects of intervention.

(Tr. 1113). In a later report, Summerall stated:

> Overall, [plaintiff] will likely be able to engage adequately in very brief tasks . . . In addition, most tasks of executive system functioning appeared intact, though he will tend to require extended time to process information and make decisions. He will have considerable difficulty learning new information, particularly verbal. Neither repetition nor reminders will be effective in aiding recall. In fact, if given options, he will have difficulty differentiating correct information from that which was not part of data previously presented to him. His cognitive performances will likely fluctuate depending on the severity of current psychiatric symptoms and, therefore, may at times be below the levels seen in this evaluation. The depression and anxiety may be primary factors in the memory difficulties, though the history of head injuries (and sleep apnea) may also contribute.

(Tr. 1279).

The ALJ also should not have discredited Dr. Medvedeva's opinion on the basis of plaintiff's supposed history of "stable and steady functioning in 2010" and his "ability to obtain housing and care for his children in 2010 and 2011." The court's review of the record indicates that during this time plaintiff's employment, housing, family and financial situation suffered a large degree of turmoil which exacerbated plaintiff's anxiety and depression. Plaintiff stopped working for his sister's business in 2010, even though his sister was apparently more accommodating to plaintiff's condition than a normal employer. He went through a divorce and his relationship with his ex-wife was a continuing source of tension for him and his children. His housing situation fluctuated. He suffered an

10

eviction. He lived in a motel. He reported being homeless on an occasion. And, at one time plaintiff and his children lived in his sister's basement. Plaintiff's adult daughter had issues with a child welfare agency. Plaintiff had two teenaged daughters who lived with plaintiff. One of the daughters became pregnant at a young age and had a baby. Plaintiff also had an adult son (with three children) who did not live with plaintiff but who relied upon plaintiff from time to time for transportation or help with children. Plaintiff participated in transporting his teenaged daughters to work and school and in caring for his grandchildren. He often related that he felt overwhelmed trying to care for his children and their children. He experienced suicidal ideation on occasion. He relapsed with alcohol once. There were times when maintaining food and electricity was problematic. He consistently reported frustration, anger, depression and anxiety to mental health professionals, although at times plaintiff declared that his mood was good.

Plaintiff managed to juggle his numerous stressful issues with the help of VA and HUD programs and personnel. This indicates that plaintiff's problems were not "completely debilitating" in the words of the ALJ. But, we find nothing in this record of plaintiff's functioning which substantially

11

refutes the opinion of Dr. Medvedeva.[1]  With particular relation to plaintiff's provision of some child care, the court finds nothing in the record which indicates that plaintiff's activity was so extensive and challenging that it is comparable to substantial gainful activity.  See Burgess v. Colvin, 2013 WL 4482711 *6 (D.Kan. 8/21/2013)(providing care for minor children did not demonstrate plaintiff was capable of substantial gainful employment).

The first step in evaluating a treating doctor's opinion is to determine whether the opinion is entitled to controlling weight.  Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004).  The second step in evaluating a treating doctor's opinion is determining what amount of weight to attach to the opinion if the opinion does not deserve controlling weight.  Id.  When an ALJ fails to give good reasons for the weight assigned to a treating physician's opinion, a remand is required. Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011).  Social Security regulations direct that more weight be given to treating source opinions unless good reasons exist for finding otherwise.  See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

---

[1] The court also disagrees with the ALJ's characterization of Dr. Medvedeva's opinion as presenting plaintiff "as an individual completely overwhelmed by mental problems." (Tr. 17).  Dr. Medvedeva represented that plaintiff has problems with attention and mood swings which would make it difficult for him to work at a regular job on a sustained basis. (Tr. 1284).  Her opinion was that plaintiff would likely be absent from work more than four days per months. (Tr. 1283).

Contrary to Watkins, the ALJ failed to provide clear or convincing reasons for giving Dr. Medvedeva's opinion little or no weight. Instead, the ALJ gave more credit to a nontreating, nonexamining doctor who concluded that plaintiff had no marked or extreme mental limitations. An "ALJ must give good reasons in the . . . decision for the weight he ultimately assigns to the [treating physician's] opinion," and if he "rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (interior quotations omitted). We find that the ALJ failed in this task.

The record shows that plaintiff exercised some ability to manage his circumstances. Plaintiff was also consistently alert and logical. His mental situation exhibited some stability in that plaintiff did not hallucinate or become delusional. But, plaintiff's situation was also stable in that he consistently reported significant problems with depression, anxiety, anger, and sadness in spite of any benefits plaintiff received from counseling and medication. Plaintiff's "stable" condition does not rejoin the assessment of Dr. Medvedeva which was supported by tests showing that plaintiff suffered from severe depression and anxiety. The ALJ's opinion also refers to plaintiff doing basic chores, providing some care for an infant and teenaged daughters, obtaining housing, and applying for unemployment benefits. Upon our review of the record, this does not provide

13

a legitimate basis for rejecting Dr. Medvedeva's opinion as a treating source.

The ALJ also rejected the opinion of Ms. Schroer on the grounds that she was not an "acceptable medical source" and her assessment was "incongruent" with the medical record. A licensed clinical social worker is not an "acceptable medical source," but instead is an "other source." 20 C.F.R. § 416.913(a), (d). Evidence from an "other source" must be considered by an ALJ "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). An ALJ should "apply the same factors to opinion evidence from 'other sources' as they do to opinion evidence from 'acceptable medical sources.'" Crowder v. Colvin, 2014 WL 1388164 *4 (10th Cir. 4/10/2014).

Ms. Schroer had numerous visits with plaintiff. The ALJ did not discuss this factor or any other factor besides what he labelled as incongruence between Ms. Schroer's opinion and other evidence in the record. The ALJ did not describe particular instances or examples of "incongruence," but it is logical to assume that the ALJ is referring to the same parts of the record which he found inconsistent with Dr. Medvedeva's opinion. As previously discussed, the court finds that the ALJ has failed to adequately explain and substantiate why the alleged

14

inconsistencies support a conclusion that plaintiff could perform substantial gainful employment.

IV. THE COURT SHALL NOT REMAND THIS CASE WITH DIRECTIONS TO AWARD BENEFITS.

Plaintiff has argued that the ALJ's decision is not supported by substantial evidence and that additional fact finding would serve no purpose. So, plaintiff asks that the court remand this case with directions to award disability benefits. Because the court has already determined that the ALJ did not properly analyze the opinion evidence in this case, the court shall not address plaintiff's contention that the ALJ's decision is not supported by substantial evidence. The court, however, has considered plaintiff's arguments and the entire record in deciding whether to remand this case with directions to award benefits. The court has discretion to remand either for further administrative proceedings or for an immediate award of benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, the court should consider both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006)(interior quotation and citation omitted). In this instance, the court finds that the length of time this

15

matter has been pending is not so great as to require the court to direct an award of benefits. Further, the court is not convinced that additional fact-finding would be futile. Therefore, the court shall not remand this case with directions to award benefits.

V. CONCLUSION

The court shall reverse defendant's decision to deny plaintiff's applications for benefits. The court shall direct that this case be remanded to the Commissioner for further proceedings consistent with this opinion, including the reweighing of the opinions of Dr. Medvedeva and Ms. Schroer. This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

     **IT IS SO ORDERED.**

Dated this 21st day of July 2014, at Topeka, Kansas.

                               s/RICHARD D. ROGERS
                               Richard D. Rogers
                               United States District Judge